IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL GORANS,** | CV 04-423-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **WASHINGTON COUNTY, HENRY ALVAREZ, and ADELL POTTER, in their individual and official capacities,** | |
| Defendants. | |

**TOM STEENSON**
**ZAN TEWKSBURY**
Steenson, Schumann, Tewksbury,
  Creighton & Rose, P.C.
815 S.W. Second Avenue, Suite 500
Portland, OR  97204
(503) 221-1792

      Attorneys for Plaintiff

**DAN OLSEN**
County Counsel
**WILLIAM G. BLAIR**
Senior Assistant County General
Washington County
155 N. First Avenue, Suite 340-MS 24
Hillsboro, OR 97124
(503) 846-4442

      Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (#16). Plaintiff brings this action against Defendants for civil rights violations under 42 U.S.C. § 1983, retaliation in violation of Or. Rev. Stat. § 659A.203, and wrongful discharge.

For the reasons that follow, the Court **DENIES** Defendants' Motion.

## **FACTS**

The following summary of the facts is stated in the light most favorable to Plaintiff as the nonmoving party.

Plaintiff was employed by Washington County's Department of Housing Services (DHS) as a Maintenance Technician from January 1, 2003, until December 31, 2003. DHS administers and operates all housing assistance programs for the Washington County Housing Authority. The Housing Authority holds title to real property and receives grants and other funds provided by federal and state agencies for housing assistance to low-income, elderly, and disabled people. Defendant Adell Potter was the Maintenance and Modernization Team Leader and Plaintiff's immediate supervisor. Defendant Henry Alvarez was Potter's supervisor.

2 - OPINION AND ORDER

New Washington County employees must successfully complete a one-year probationary period before they are given career status. As a probationary employee, Plaintiff's employment was at-will, and Plaintiff was not entitled to "just cause" termination rights.

From January 1, 2003, until June 2003, Plaintiff was assigned to perform maintenance work primarily on public housing units owned by the Housing Authority and operated under the federal Department of Housing and Urban Development's (HUD) public housing program. Plaintiff worked independently doing maintenance and repair work on housing units. During this period, Plaintiff's work was reviewed by Senior Maintenance Technician Tu Truong. Truong found Plaintiff's work generally acceptable. Potter also occasionally received communications from tenants complimenting Plaintiff on his work and demeanor.

In May or June 2003, Alvarez reassigned Plaintiff to work on rehabilitation of Bonita Villa, a 96-unit apartment complex owned by the Housing Authority. Bonita Villa was classified as "affordable housing," but it was not part of the HUD public housing program. Steven Nicholas, Senior Maintenance Technician, was primarily responsible for the Bonita Villa rehabilitation work. Nicholas monitored the progress of the rehabilitation work and inspected the completed apartments. Potter or Nicholas gave Plaintiff lists of specific work to be done in specific units.

3 - OPINION AND ORDER

Sometimes more than one technician would work in a particular unit.

On May 23, 2003, Plaintiff attended a staff meeting of the Maintenance and Modernization Team. At the meeting, Plaintiff complained about what he believed was Nicholas's improper use of federal HUD inventory and equipment at non-HUD properties. Although he was not attending the meeting, Nicholas overheard Plaintiff's comments and "flashed the meanest looking face" Plaintiff "had seen in years." On May 28, 2003, Plaintiff wrote to Potter and complained about the responses of Potter and Nicholas to Plaintiff's comments at the meeting.

Shortly after the May 23, 2003, meeting and Plaintiff's subsequent letter, Potter started making written notes regarding Plaintiff's work.

In June or July 2003, Potter told Plaintiff and other maintenance technicians to change the dates and times on work orders for emergency work so that the dates and times would comply with HUD's 24-hour response requirement. Plaintiff refused to change the dates on the work orders and told Potter more than once that he believed changing the dates was not right. Potter denies instructing Plaintiff to falsify work orders, but she admits she requested employees to make changes to work orders and times sheets due to changes in the County's time-tracking system.

Although Nicholas was responsible for supervising the work at Bonita Villa, Plaintiff asserts Nicholas only appeared at Bonita Villa every couple of weeks and then only for 10-15 minutes. Nicholas did not give Plaintiff advice or direction on how to do the work, but he told Plaintiff "what not to do." Plaintiff was often required to go to Home Depot or other stores to get materials because Nicholas did not procure the necessary equipment and materials Plaintiff and the other Maintenance Technicians needed to complete the work at Bonita Villa.

Nicholas or Potter often told Plaintiff to stop working on a unit before the work had been completed to Plaintiff's satisfaction. Plaintiff believes this is because funding was inadequate to complete all of the necessary work.

In a handwritten note dated July 31, 2003, Potter states Nicholas reported to her that Plaintiff's "work product is not satisfactory and that his productivity level is very low." Potter also says Alvarez asked Tu Truong to take pictures of unit 77, "which was completed by [Plaintiff]."

In a note dated August 4, 2003, Potter states, "Tu turned in pictures of unit 77 at Bonita. Some items need redoing. Set up meeting with Steve [Nicholas] and [Plaintiff] to review the unit. Include Tu in the site review."

In an undated note, Potter describes a "Bonita Site Visit #77." She notes:

5 - OPINION AND ORDER

> After reviewing the repairs Steve [Nicholas] determine [*sic*] some were not done by [Plaintiff] but were [illegible] done by others.
>
> Talked with [Plaintiff] and showed him which repairs should be redone.
>
> [Plaintiff] was concern [*sic*] because he fixed or repaired some items per Steve instructions.

In a note dated August 7, 2003, Potter states:

> Asked Tu to prepare a new work order to address items that were still outstanding in unit 77 Bonita. [Plaintiff] has some concern regarding verbiage used on work order. [illegible] work order given to [Plaintiff] to complete unit. Original conversation to [Plaintiff] was to get the unit ready and conserve on costs. [Plaintiff] said his original assessment of unit called for more extensive repairs than authorized to do.

On August 18, 2003, Potter noted "Unit painted and work order closed. Unit passed inspection by Steve Nicholas."

Beginning in October 2003, Plaintiff complained to Potter several times about Nicholas's failure to manage Bonita Villa properly, including Nicholas's failure to provide needed materials, to make inspections, and to make decisions about the work that should be done.

On November 29, 2003, at Potter's request and in anticipation of Plaintiff's year-end review, Plaintiff prepared a written review of his own performance and listed his accomplishments and goals. Plaintiff never received a performance review from Potter during his probationary period.

In December 2003, Plaintiff learned Nicholas had taken photos of work allegedly done by Plaintiff at Bonita Villa. Plaintiff complained to Potter and told her he wanted to know if there was a problem with his work. Potter told Plaintiff she had not heard of any problems with Plaintiff's work and Plaintiff would be the first to know if she did.

On December 31, 2003, Potter met with Plaintiff and gave him a letter signed by Susan Wilson, Director of DHS. In the letter, Wilson stated Plaintiff had "failed to meet the standards necessary to successfully complete" his one-year probationary period. At the meeting, Potter also showed Plaintiff some photographs of work for which Potter contended Plaintiff was responsible. These included the photos of unit 77 taken in August 2003 as well as photos of unit 91 taken in November and December 2003. Potter asserts the photos show inadequate work done by Plaintiff at Bonita Villa. Plaintiff, however, asserts the photos show things that were not on his work order or that Nicholas had told him not to repair. Plaintiff had not seen any of these photographs before the December 31 meeting and had not been told by anyone from the County that his work was inadequate.

Wilson decided to terminate Plaintiff's employment based on information she received from Alvarez and Potter. Alvarez told Wilson that Plaintiff's work was unacceptable and gave Wilson a file with photographs that Alvarez said showed Plaintiff's

7 - OPINION AND ORDER

unacceptable work at Bonita Villa.

## DEFENDANTS' EVIDENTIARY OBJECTION

In their Memorandum in Reply to Plaintiff's Response to Motion for Summary Judgment, Defendants object to Plaintiff's use of the transcripts of the depositions of Alvarez, Potter, Wilson, and Nicholas. Defendants contend the transcripts do not comply with Fed. R. Civ. P. 30(e) and (f)(1) because the reporter's certificate does not indicate whether the witness reserved the right to read and to sign the transcript. Defendants rely on *Orr v. Bank of America*, 285 F.3d 764, 774 (9th Cir. 2002).

In *Orr*, the Ninth Circuit upheld the District Court's exclusion of deposition excerpts that lacked any certification by the court reporter and did not identify the deponent or the action. The Court held:

> A deposition or an extract thereform is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent.

*Id.* at 774. The deposition excerpts relied on by Plaintiff satisfy this standard, and, therefore, the Court overrules Defendants' objection.

**STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer,*

*Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

### I. Section 1983 (First Amendment)

An individual whose federal constitutional rights have been violated by a public official acting under color of state law may sue the official for damages pursuant to 42 U.S.C. § 1983. *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001).

Plaintiff alleges Defendants Alvarez and Potter violated Plaintiff's First Amendment right to freedom of speech.[1] To prevail, Plaintiff must establish "(1) [he] engaged in protected speech; (2) the defendants took an 'adverse employment action' against [him]; and (3) [his] speech was a 'substantial or motivating' factor for the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004)(quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)). "To be protected, [a government employee's] speech must be on a matter of public concern, and the employee's interest in

---

[1] Plaintiff does not assert his First Amendment claim against Defendant Washington County. To the extent Defendant Washington County seeks summary judgment as to Plaintiff's § 1983 claim, therefore, the Motion its moot.

10 - OPINION AND ORDER

expressing herself on this matter must not be outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Waters v. Churchill*, 511 U.S. 661, 668 (1994)(internal quotation and citation omitted). If Plaintiff satisfies this part of the test, the burden shifts to Defendants to show they would have taken the adverse action even in the absence of the protected speech. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

**A.  Plaintiff's Speech Addressed Matters of Public Concern.**

Plaintiff alleges Defendants violated Plaintiff's First Amendment right to free speech when they recommended Wilson terminate Plaintiff's employment in retaliation for his objection to allegedly unethical and/or illegal practices at Washington County. Defendants contend Plaintiff's speech was not protected because it did not address matters of public concern. "Whether an employee's speech involves an issue of public concern is a question of law." *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405 (9th Cir. 1988). "Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community." *Johnson v. Multnomah County*, 48 F.3d 420, 422 (9th Cir. 1995)(internal quotation and citation omitted).

> Speech by public employees may be character-
> ized as not of "public concern" when it is

11 - OPINION AND ORDER

> clear that such speech deals with individual
> personnel disputes and grievances and that
> the information would be of no relevance to
> the public's evaluation of the performance of
> governmental agencies. See *Connick*. On the
> other hand, speech that concerns "issues
> about which information is needed or
> appropriate to enable the members of society"
> to make informed decisions about the
> operation of their government merits the
> highest degree of first amendment protection.

*Allen v. Scribner,* 812 F.2d 426, 431 (9th Cir. 1987)

Defendants contend Plaintiff's speech "consisted of questioning the process for checking out equipment that arose in the context of a routine staff meeting of other employees; declaring to non-supervisory co-workers that he was not going to comply with a directive to change entries in work orders; and casual speech to non-supervisory co-workers criticizing a lead worker's 'management style.'" Defendants' characterization of Plaintiff's speech, however, ignores the standard that must be applied in a motion for summary judgment.

Viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, the Court concludes Plaintiff's statements involved matters of public concern. Plaintiff complained about the conduct of Washington County employees, which he believed was unlawful or unethical. That conduct included noncompliance with HUD regulations, mismanagement of county work, and misuse of HUD funds and inventory. It is well-settled that "misuse of public funds, wastefulness, and

12 - OPINION AND ORDER

inefficiency in managing and operating government entities are matters of inherent public concern." *Johnson v. Multnomah County*, 48 F.3d at 425. Plaintiff's statements, viewed in the light most favorable to Plaintiff, fit this description.

### B. The Causal Connection Between Plaintiff's Speech and Termination of Plaintiff's Employment.

Defendants also argue there was no causal connection between Plaintiff's speech and the termination of Plaintiff's employment even if Plaintiff's speech was protected. The requisite causal connection may be established by either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence:

> (1) proximity in time between the protected speech and the alleged retaliation; (2) the employer's expressed opposition to the speech; and (3) other evidence that the reasons proffered by the employer for the adverse employment action were false and pretextual.

*Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2001). The Court finds the record contains sufficient evidence from which a trier of fact could find a circumstantial causal connection between Defendants' decision to terminate Plaintiff's employment and Plaintiff's protected speech.

#### 1. Temporal Proximity.

The Court finds the temporal proximity between Plaintiff's speech and his termination is sufficient to support a finding of causation. Plaintiff complained about unlawful or

13 - OPINION AND ORDER

unethical conduct in May 2003, June or July 2003, and again in October 2003. Defendants terminated Plaintiff on December 31, 2003. *See id.* (protected statement made 11 months before adverse employment action was sufficient to constitute circumstantial evidence of retaliatory motive).

## 2. Defendants' Opposition to Plaintiff's Speech.

Plaintiff also asserts his Declaration constitutes evidence that Alvarez and Potter expressed opposition to his speech concerning mismanagement and unethical conduct by Washington County employees. Plaintiff's Declaration, however, is conclusory and does not contain any facts to demonstrate opposition by Alvarez or Potter to Plaintiff's complaints. For example, Plaintiff states "Alvarez seemed to belittle [Plaintiff's] complaint," but Plaintiff does not relate any statements by Alvarez in opposition to Plaintiff's complaints. Similarly, Plaintiff states at the May 23, 2003, meeting, Potter "admonished [Plaintiff] for making a complaint." Again, however, Plaintiff does not relate Potter's comments. It is clear from Plaintiff's subsequent letter to Potter that, in fact, Plaintiff merely "perceived [Potter's reaction] . . . as a nonverbal admonition to change the subject." The record does not contain any evidence from which a jury could find Alvarez or Potter opposed Plaintiff's speech.

### 3. Evidence that Defendants' Proffered Reasons for Plaintiff's Termination Were Pretextual.

Plaintiff also contends the record contains evidence from which a jury could find Defendants' proffered reasons for terminating him were pretextual. Defendants assert Plaintiff was fired because his work was inadequate and inconsistent. Plaintiff points to evidence that his job performance was excellent until at least July 2003, and he was selected to do the rehabilitation work at Bonita Villa because of his experience and the quality his work. Plaintiff argues Potter's notes regarding allegedly unsatisfactory work on unit 77 at Bonita Villa were kept secret from him. Plaintiff also states he was never informed of any problems with his work until he was terminated. In addition, Plaintiff alleges Nicholas retaliated against him beginning in October 2003 by taking photographs of work that Plaintiff had done at Bonita Villa. When Plaintiff complained to Potter about Nicholas, Potter told him that she was unaware of any problems with Plaintiff's performance. Many of these facts are denied by Defendants. The Court finds, however, Plaintiff has produced sufficient evidence to create a fact question on the issue whether Defendants' reasons for terminating Plaintiff's employment were pretextual.

Accordingly, the Court concludes Defendants are not entitled to summary judgment on Plaintiff's § 1983 claim.

C.  **Qualified Immunity**

In their Memorandum in Reply, Defendants also argue for the first time that they are entitled to qualified immunity from Plaintiff's § 1983 claim. Defendants, however, do not cite any authority to support their qualified immunity defense, and the Court finds Defendants' argument to be insufficiently developed. In addition, it appears significant fact questions would preclude summary judgment on the issue of Defendants' qualified immunity. In any event, because Defendants failed to raise their argument properly in their Motion for Summary Judgment or the original Memorandum in Support of their Motion and failed to brief this argument adequately, the Court denies Defendants' Motion for Summary Judgment to the extent it depends on Defendants' qualified immunity argument. To the extent Defendants wish to raise this defense anew in the Pretrial Order, the Court will resolve it on an appropriately developed record before or during trial.

**II. Or. Rev. Stat. § 659A.203 (Whistleblower Law)**

Plaintiff alleges Defendants violated Or. Rev. Stat. § 659A.203, Oregon's public employee whistleblower law. Pursuant to Or. Rev. Stat. § 659A.203(1)(b), it is an unlawful employment practice for a public employer to:

> Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably

16 - OPINION AND ORDER

>           believes is evidence of:
>
>           (A) A violation of any federal or state law,
>           rule or regulation by the state, agency or
>           political subdivision; [or]
>
>           (B) mismanagement, gross waste of funds or
>           abuse of authority.

Defendants do not cite any authority to support their Motion for Summary Judgment as to Plaintiff's state-law whistleblower claim but instead argue Plaintiff was mistaken about what constitutes illegal conduct or misuse of federal funds. Again, Defendants fail to apply the appropriate standard for a summary judgment motion and characterize Plaintiff's conduct in the light most favorable to Defendants.

Plaintiff, however, has presented evidence that he reported conduct he reasonably believed was unethical, perhaps illegal, and, at a minimum, constituted mismanagement. As noted, Plaintiff has also presented some evidence from which a jury could find that Defendants retaliated against him because of his disclosure of this alleged misconduct. The Court, therefore, finds Defendants' assertions that Plaintiff was mistaken in his beliefs about Defendants' conduct do not entitle Defendants to summary judgment as to this claim.

Based on this record, the Court concludes Defendants have not established they are entitled to judgment as a matter of law.

**III. Wrongful Discharge**

Defendants argue they are entitled to summary judgment as to

17 - OPINION AND ORDER

Plaintiff's wrongful discharge claim because Plaintiff cannot establish Defendants deprived him of his First Amendment rights. Defendants do not offer any additional arguments but merely rely on their argument regarding Plaintiff's § 1983 claim.

Accordingly, for the reasons set forth above, the Court finds Defendants are not entitled to summary judgment.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (#16).

IT IS SO ORDERED.

DATED this 1st day of July, 2005.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge